**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

TASHA TILLERY
An individual,

   Plaintiff

v.

THE BOARD OF COUNTY COMMISIONERS OF THE COUNTY OF ARAPAHOE
A local government entity.

and

MATT CRANE, ARAPAHOE COUNTY CLERK AND RECORDER
In his official capacity.

   Defendants

---

**COMPLAINT AND REQUEST FOR JURY TRIAL**

---

   Tasha Tillery, by and through her attorneys, Thomas H. Mitchiner of Mitchiner Law, LLC and Steven L. Murray of Murray Law, LLC, hereby asserts the following allegations and claims against the Defendants, the Board of County Commissioners of the County of Arapahoe, and Matt Crane, Arapahoe County Clerk and Recorder, in his official capacity.

   This is an employment discrimination and retaliation case arising from the County's discriminatory treatment of Ms. Tillery, based on her disability and issues

related to her disability, and the County's retaliation against Ms. Tillery for engaging in lawfully protected activity.

This action asserts violations of the: (1) Americans with Disabilities Act of 1990, the American with Disabilities Amendments Act of 2008, as amended, 42 U.S.C. § 12101, et. seq., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 and 794, [collectively referenced as the ADA]; and (2) the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et. seq. [FMLA].

## I.  PARTIES

1.      Ms. Tillery, a female, is a United States citizen and resident of the County of Pueblo, State of Colorado.  At all times in issue, Ms. Tillery resided and worked in the Judicial District of the Court.

2.      Defendants, the Board of County Commissioners of the County of Arapahoe, and Matt Crane, Arapahoe County Clerk and Recorder, in his official capacity, conduct business in Arapahoe County, State of Colorado, within the Judicial District of the Court.

3.      The Defendants are collectively referenced herein as the "County."

4.      The County employed Ms. Tillery from on or about December 2, 2013 until on or about July 9, 2015.

5.      The County discharged Ms. Tillery from employment on or about July 9, 2015.

## II.  JURISDICTION AND VENUE

6.     Jurisdiction is asserted pursuant to the ADA, 42 U.S.C. § 12117(a), and the FMLA, 29 U.S.C. § 22617(c)(1).

7.     At all times at issue, Ms. Tillery was an employee of the County as defined by the ADA and the FMLA.

8.     At all times at issue, the County was an employer as defined by the ADA and the FMLA.

9.     Ms. Tillery as a qualified person with a disability is a member of the ADA's protected class.

10.     Ms. Tillery is a member of the class of persons protected from retaliation under the ADA and she engaged in protected activity under the ADA.

11.     Ms. Tillery engaged in protected activity under the FMLA and she was a member of the class of persons protected from retaliation under the FMLA.

12.     Pursuant to 28 U.S.C. § 1391(b)(c), venue is proper in this Court because the events and claims arose in the County of Arapahoe, State of Colorado, and in the Judicial District of this Court.

## III.  ADMINISTRATIVE PROCEDURES

13.     Prior to filing this action, Ms. Tillery timely, properly, and lawfully exhausted all required administrative prerequisites procedures and remedies.

14.     On or about November 6, 2015, Ms. Tillery filed a timely charge of ADA discrimination and retaliation with the Equal Employment Opportunity Commission. [EEOC] [Discrimination Charge No. 541-2016-00187].

15.     On July 27, 2015, the EEOC issued a Determination finding reasonable cause to believe that the County, violated the ADA when it discharged Ms. Tillery because of her disability, denied her reasonable accommodations, and discharged her in retaliation for engaging in ADA protected activity.

16.     On July 2, 2018, the United States Department of Justice issued a Notice of Right to Sue letter to Ms. Tillery.

17.     This civil action is timely and properly filed because it is filed within 90 days of the date of the Notice of Right to Sue letter.

## IV.  GENERAL ALLEGATIONS

18.     Ms. Tillery served as the Lead Driver's License Specialist for the County's Motor Vehicle Department of the Arapahoe County Clerk and Recorder's Office.

19.     The County assigned Ms. Tillery to work from Aurora branch of the Clerk and Recorder's office.  The Aurora branch office was Ms. Tillery's primary branch.

20.     Over the course of Ms. Tillery's employment with the County, it directed Ms. Tillery to work out of the Centennial branch and out of the main's Clerk's office at the Littleton branch.

21.     On occasion, the County assigned Ms. Tillery to work out of the Centennial and/or Littleton branch for weeks at a time.

22.     At times, Ms. Tillery would perform Supervisor-type duties while working in the Centennial and/or Littleton branches.

23.     In February 2015, Ms. Tillery experienced a severely adverse medical episode. Ms.  Tillery suffered: (1) a torn blood vessel/artery; (2) severe internal bleeding; (3) three strokes; and (4) impaired vision.

24.     Because of the medical episode and three strokes, Ms. Tillery lost some cognitive skills.

25.     Ms. Tillery took: (1) approved FMLA leave from on or about February 7, 2015-May 2, 2015; and (2) approved non-FMLA leave from on or about May 2, 2015 - May 29, 2015.

26.     In May, June, and July of 2015, Ms. Tillery submitted a series of physician/medical statements to the County setting forth her condition, the need for her to attend physician appointments and appointments to receive blood tests/draws/monitoring, and restrictions.

27.     Ms. Tillery provided the County with medical documentation, dated June 2, 2015, June 4, 2015, and June 9, 2012, confirming the critical need for her to have blood tests/draws/monitoring on a weekly basis.

28.     Ms. Tillery could not attend her medical appointments and/or appointments to receive blood tests/draws/monitoring during non-work hours, because these appointments were not available to her during non-work hours.

29.     In a document dated July 1, 2015, Ms. Tillery's medical provider completed a County questionnaire directly addressing the accommodation issue, submitted to the County, stating: "patient [Ms. Tillery] must be able to leave work for

doctor's appts and blood drawn [-] *these are absolutely essential for her recovery*." (emphasis added).

30.     Ms. Tillery returned to work on a part-time basis from on or about June 4, 2015 – June 12, 2015.

31.     Bridgett Gurule [Gurule], County Deputy of Motor Vehicles, served as Ms. Tillery's direct supervisor.

32.     In June 2015, Gurule informed Ms. Tillery that she would not be granted any leave, of any form, paid or unpaid, to attend physician appointments and/or blood tests/draws/monitoring. [Blanket Accommodation Leave Denial # 1].

33.     On or about June 18, 2015, Dorinne Blea [Blea], the County's Leave and Disability Coordinator, reiterated the County's position to Ms. Tillery that she would not be granted any of any form, paid or unpaid, to attend physician appointments and/or blood tests/draws/monitoring. [Blanket Accommodation Leave Denial # 2].

34.     Ms. Tillery returned to work on a full-time basis from on or about June 15, 2015, until the July 9, 2015, the date of her discharge.

35.     In June 2015, Ms., Tillery, upon returning to work on a full-time basis, requested the County to provide her a reasonable accommodation—a temporary assignment to work from the Littleton branch of the Clerk's office. [Accommodation Request # 1].

36.     The County denied Ms. Tillery's reasonable accommodation set forth in Accommodation Request # 1.

37.     The accommodation of temporarily assigning Ms. Tillery to the Littleton branch would have: (1) permitted her to attend her medical appointments with physicians and to attend appointments with medical providers for blood monitoring and blood tests, without taking any time off work; and (2) allowed Ms. Tillery's family members to take her to appointments at the medical facility located six minutes from her office.

38.     Because the County denied Ms. Tillery's accommodation request, Ms. Tillery was forced to wait for public transportation and use public transportation to attend her medical appointments.

39.     Because of the situation created by the County's refusal to grant Ms. Tillery's Accommodation Request # 1, the County made it impossible for Ms. Tillery to arrive at her medical provider's office at 8:00 am for blood monitoring and thereafter, travel to the Aurora branch by 8:30 am, her required start time.

40.     Following the County's denial of Ms. Tillery's request to work at the Littleton branch, she feared for her job.

41.     With her medical issues she could not lose her job because it could result in the loss of health insurance and income.

42.     The County forced Ms. Tillery to choose between her health and her job, as a result, she reluctantly agreed to continue working at the Aurora branch.

43.     Ms. Tillery requested a second reasonable accommodation—the County's permission to use unpaid time to attend medical appointments and receive blood work treatment/monitoring. [Accommodation Request # 2].

44.    The County denied Ms. Tillery's reasonable accommodation set forth in Accommodation Request # 2.

45.    Because Ms. Tillery was in fear of losing her job, she did not attend any medical appointments and/or treatments during the two weeks she returned to work on a full-time basis, on or about June 14, 2015 – June 30, 2015.

46.    Ms. Tillery did not attend any medical appointments and/or treatments during the two weeks she returned to work full-time because the County had denied her two accommodation requests, including the necessary leave for Ms. Tillery to attend her medical appointments.

47.    Ms. Tillery's health was jeopardized by not attending these appointments.

48.    The County made Ms. Tillery decide what was more important her health or her job.

49.    Because of the County's refusal to grant Ms. Tillery's accommodation requests, the County effectively prevented Ms. Tillery from attending her medical appointments and treatments without jeopardizing her job by taking unapproved leave and/or time away from work.

50.    In June 2015, Ms. Tillery attempted to schedule medical appointments in August and use the leave time she would have earned in June/July 2015. [Accommodation Request # 3].

51.    The County requested Ms. Tillery to provide medical documentation to allow her to be seen by a physician on a regular basis. Ms. Tillery provided the documentation.

52.     The County denied Ms. Tillery's reasonable accommodation set forth in Accommodation Request # 3.

53.     On June 29, 2015, Ms. Tillery experienced severe, sudden, and adverse medical problems while at work.

54.     On June 29, 2015, Ms. Tillery's direct supervisor and two of her co-workers were aware of Ms. Tillery's sudden and severe problems she was experiencing while at work.

55.     From June 29-30, 2015, Ms. Tillery became severely ill, her illness relates directly to her inability to attend her weekly blood tests/draws/monitoring.

56.     Ms. Tillery could not attend her weekly blood tests/draws/monitoring sessions because the County had refused to grant her any leave of any form, paid or unpaid, to attend the necessary medical sessions. These medical appointments could not be set and/or attended during Ms. Tillery's non-working hours.

57.     On June 29-30, 2015, Ms. Tillery's blood became too thick and created a risk for abnormal blood clotting.

58.     On June 30, 2015, Ms. Tillery had an emergency doctor's appointment.

59.     The physician upon seeing her immediately called an ambulance and sent her to the emergency room because of conditions associated with memory loss.

60.     On June 30, 2015, the County telephoned Ms. Tillery, while Ms. Tillery was receiving medical care in the hospital, to inquire why she was not at work on June 30, 2015.

61.     From May 2, 2015 until the date of Ms. Tillery's discharge on July 9, 2015, Ms. Tillery had submitted medial documentation to the County concerning her work restrictions. The County repeatedly ordered Ms. Tillery to provide additional or revised medical restriction forms.

62.     The County discharged Ms. Tillery on July 9, 2015,

63.     Ms. Tillery's last performance appraisal prior to her discharge was in December 2014. This evaluation reflected Ms. Tillery's performance as satisfactory.

64.     The County's discriminatory and retaliatory practices were intentional and willful, done with malice, and/or with reckless disregard for the federally protected rights of Ms. Tillery, secured by and under the laws of the United States, including the ADA and the FMLA.

65.     For all the reasons set forth in this Complaint, Ms. Tillery, as a direct and proximate result of the County's intentional and willful violations of the ADA and the FMLA, has suffered and will continue to suffer in the future, damages, injuries, and losses. Ms. Tillery's damages, injuries, and losses include severe emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and the potential and/or actual loss of wages, earnings, income, diminution of earning capacity, actual and/or potential retirement benefits, loss of employment, future pecuniary losses and other damages to be determined at trial.

## FIRST CLAIM FOR RELIEF
### [Disability Discrimination]

66.     Ms. Tillery incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

67.     The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

68.     The ADA prohibits the County from discriminating against Ms. Tillery: (1) with respect to her compensation, terms, conditions, or privileges of employment, because of her disability and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

69.     Ms. Tillery is a member of the ADA protected class.

70.     Ms. Tillery has a disability pursuant to the ADA. 42 U.S.C. § 12101(1)(A).

71.     Ms. Tillery has a physical or mental impairment that substantially limits one or more major life activities of such individual; 42 U.S.C. § 12101(2) (A).

72.     In February 2015, Ms. Tillery experienced a severely adverse medical episode.

73.     Ms.  Tillery suffered damage to her arteries [a torn blood vessel], severe internal bleeding, three strokes; and impaired vision. These impairments adversely impact Ms. Tillery's ability to focus, concentrate, and perform tasks.

74.     Ms. Tillery's mental and physical impairments substantially impact one or more of her life activities, including performing manual tasks, seeing, thinking, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(B).

75.     At all times at issue herein, Ms. Tillery is a "qualified individual" under the ADA.

76.     Ms. Tillery is an individual who, with or without reasonable accommodation: (1) could perform the essential functions of the employment positions she held with the County. 42 U.S.C. § 12111(8); and (2) possesses the requisite skill, experience, education and other job-related requirements of the employment positions she held with the County.

77.     The County engaged in unlawful, direct, and intentional disability discrimination against Ms. Tillery because of her disability, and/or, Ms. Tillery's f protected status as a qualified individual with a disability was a motivating factor in the County's discriminatory treatment of Ms. Tillery and the County's decision to discharge Ms. Tillery.

78.     The County discriminated against Ms. Tillery: (1) with respect to her compensation, terms, conditions, or privileges of employment, because of her disability; and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

79.     The County's unlawful, intentional disability discrimination was created, perpetrated, and/or tolerated by the County's officials and managers, all having specific knowledge, or reason to know, of the discriminatory actions set forth herein.

80.     The County's treatment of Ms. Tillery constitutes intentional, unlawful disability discrimination, in violation of the ADA.

## SECOND CLAIM FOR RELIEF
### [Disability Discrimination – Failure to Accommodate]

81.     Ms. Tillery incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

82.     The ADA prohibits the County from not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless the County can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. 42 U.S.C. § 12112 (b) (5)(A).

83.     At all times material herein, Ms. Tillery was a qualified person with a disability under the ADA. The County knew of Ms. Tillery's disabilities.

84.     Ms. Tillery could have performed the essential functions of every job to which she was assigned by the County, if the County had not denied the reasonable accommodations at issue in the County's actions informing Ms. Tillery that the County would not grant her any leave, of any form, paid or unpaid, to attend physician appointments and/or blood tests/draws/monitoring. [Blanket Accommodation Leave Denials ## 1, 2].

85.     The accommodations at issue in the Blanket Accommodation Leave Denials ## 1, 2 were reasonable.

86.     Ms. Tillery could have performed the essential functions of every job to which she was assigned by County, if she had had been provided with the accommodations she requested. [Accommodation Requests ### 1,2,3].

87.     In June 2015, Ms., Tillery requested the County to provide her a reasonable accommodation—temporarily assign her to work from the Littleton branch of the Clerk's office. [Accommodation Request # 1].

88.     The County denied Ms. Tillery's Accommodation Request # 1.

89.     Ms. Tillery requested a second reasonable accommodation—County permission to use unpaid time to attend medical appointments and receive blood work treatment/monitoring. [Accommodation Request # 2].

90.     The County denied Ms. Tillery's Accommodation Request # 2.

91.     In June 2015, Ms. Tillery attempted to schedule medical appointments in August and use the leave time she would have earned in June/July 2015. [Accommodation Request # 3].

92.     The County denied Ms. Tillery's Accommodation Request # 3.

93.     The County denied Ms. Tillery reasonable accommodations by issuing the two Blanket Accommodation Leave Denials # # 1, 2.

94.     The accommodations at issue in the two Blanket Accommodation Leave Denials # # 1, 2 were reasonable.

95.     The County denied Ms. Tillery's reasonable accommodations in the Accommodation Requests ### 1, 2, 3.

96.      Ms. Tillery's reasonable Accommodation Requests ### 1,2,3 were reasonable.

97.     The County unreasonably failed to provide Ms. Tillery any other accommodation.

98.     The County's refusal to provide the reasonable accommodations in issue to Ms. Tillery, constitutes an intentional and unlawful violation of the ADA.

### THIRD CLAIM FOR RELIEF
### [ADA Retaliation]

99.     Ms. Tillery asserts a claim of unlawful retaliation in violation of the ADA. 42 U.S.C. § 12203(a).

100.     The ADA prohibits the County from unlawful retaliation and discrimination against Ms. Tillery because she engaged in activities protected by the ADA. 42 U.S.C. § 12203(a).

101.     The ADA prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. 42 U.S.C. § 12203(a).

102.     Ms. Tillery engaged in protected activities under the ADA, by: (1) opposing the County's discriminatory conduct concerning her rights under the ADA; (2) opposing the County's discrimination and retaliation against her, following her initial request for a reasonable accommodation and/or her submission of work restrictions to the County; (3) opposing the County's Blanket Accommodation Leave Denials; and (4) making three requests for reasonable accommodations to the County and submitting work restrictions to the County.

103.     At all times, the County was fully aware of Ms. Tillery's protected ADA activities.

104.   The County engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation against Ms. Tillery.

105.   The County's intentional, unlawful retaliation was created, perpetrated, and/or tolerated by County officials, managers, and employees.

106.   The County, contemporaneously with, and/or immediately after, Ms. Tillery's repeated, protected activities, took actions against her that a reasonable employee would have found materially adverse.

107.   The County retaliated against Ms. Tillery by subjecting her to a series of intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions, including but not limited to: (1) issuing the Blanket Accommodation Leave Denials ## 1 and  2; (2) refusing to grant Ms. Tillery's Accommodation Requests ## 1, 2, and 3; (3) placing Ms. Tillery's into a continuing "conflicted no-win" work environment where she could not receive the serious medical care she required without jeopardizing her employment status by taking un-approved leave to attend her medical appointments; and (4) discharging her from employment.

108.   A causal connection exists between Ms. Tillery's protected activities and the unlawful materially adverse employment actions taken by the County against Ms. Tillery.

109.   The County's treatment of Ms. Tillery, considered in its totality and in a cumulative manner, as set forth in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, materially adverse, retaliatory and discriminatory actions prohibited by the ADA.

110.    The County's materially adverse treatment of Ms. Tillery constitutes unlawful intentional retaliation and discrimination in violation of the ADA.

## FOURTH CLAIM FOR RELIEF
### [Disability Discrimination - Regarded as Disabled]

111.    Ms. Tillery incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

112.    The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

113.    The ADA's definition of disability and discrimination includes discrimination against a person based on the person being **regarded as** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2) (A).

114.    An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been subjected to an action prohibited by the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

115.    The County engaged in intentional, unlawful disability discrimination against Ms. Tillery based on the County regarding Ms. Tillery as having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2) (A).

**FIFTH CLAIM FOR RELIEF**
**[Disability Discrimination - Record of Disability]**

116.   Ms. Tillery incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

117.   The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

118.   The ADA's definition of disability and discrimination includes discrimination against a person based on the person's **record of** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2) (A).

119.   As previously set forth in this complaint, Ms. Tillery has a record of mental and physical impairments which substantially impact one or more of major life activities, including performing manual tasks, seeing, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(B).

120.   At all times at issue herein, Ms. Tillery was a "qualified individual" under the ADA. Specifically, Ms. Tillery was as an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions she held with the County. 42 U.S.C. § 12111(8).

121.   The County engaged in intentional, unlawful disability discrimination against Ms. Tillery, including but not limited to discriminating against Ms. Tillery based on her record of a disability.

## SIXTH CLAIM FOR RELIEF
### [FMLA Retaliation]

122.   Ms. Tillery incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

123.   The FMLA makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA.

124.   The FMLA provides up to 12 weeks of job-protected, unpaid leave to any "eligible employee" who suffers from a serious medical condition.

125.   Ms. Tillery availed herself of a protected right under the FMLA. Ms. Tillery took approved FMLA leave from her job. This conduct constituted protected activity under the FMLA.

126.   The County approved Ms. Tillery's use of FMLA leave.

127.   Ms. Tillery was qualified for and successfully took FMLA leave.

128.   The County took materially adverse actions against Ms. Tillery, contemporaneously with, or after her use of FMLA leave.

129.   The County retaliated against Ms. Tillery by subjecting her to a series of intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions, including but not limited to: (1) issuing the Blanket Accommodation Leave Denials ## 1 and  2; (2) refusing to grant Ms. Tillery's Accommodation Requests ## 1, 2, and 3; (3) placing Ms. Tillery's into a continuing "conflicted no-win" work environment where she could not receive the serious medical care she required without jeopardizing

her employment status by taking un-approved leave to attend her medical appointments; and (4) discharging her from employment.

130.   A causal connection exists between Ms. Tillery's protected activity, her use of FMLA leave, and County's materially adverse actions against Ms. Tillery.

131.   The County's treatment of Ms. Tillery, considered in its totality and in a cumulative manner, as set forth in the above paragraphs of this claim and Complaint, constitutes willful, unlawful, direct, intentional, materially adverse, retaliatory and discriminatory actions prohibited by the FMLA.

132.   The County's materially adverse treatment of Ms. Tillery constitutes unlawful intentional retaliation and discrimination in violation of the FMLA.

## V.     REQUEST FOR RELIEF

WHEREFORE, the County's unlawful conduct directly caused Ms. Tillery to suffer injuries, damages, and losses;

FURTHER, Ms. Tillery respectfully requests this Court to enter judgment in her favor and against Defendant County on the claims in issue and award the following relief under the ADA and the FMLA, and all applicable laws:

(a)     To enter a judgment in favor of Ms. Tillery and against County, finding the acts of the County constitute unlawful intentional discrimination and retaliation in violation of the ADA;

(b)     To enter a judgment in favor of Ms. Tillery and against County, finding the acts of the County constitute unlawful intentional discrimination in violation of the FMLA;

(c)     To award Ms. Tillery the remedies of damages for back pay, front pay, restored benefits, accommodations, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled;

(d)     To award Ms. Tillery compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which she is entitled;

(e)     To award Ms. Tillery punitive and liquidated damages;

(f)     To award Ms. Tillery attorney fees and costs;

(g)     To award Ms. Tillery pre-judgment and post-judgment interest at the appropriate rate provided by law;

(h)     To direct County to take such affirmative relief steps as are necessary to ensure that the effects of County's unlawful employment practices are eliminated and do not continue to affect Ms. Tillery's employment opportunities;

(i)     Order the County to reinstate Ms. Tillery to employment;

(j)     To award Ms. Tillery front pay, and;

(k)     To award Ms. Tillery all other legal and equitable relief, to which Ms. Tillery is entitled pursuant to any law, that this Court deems just, equitable, and proper.

## VI.    JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), the ADA, and the FMLA, and all applicable laws providing for a right to trial by jury, Ms. Tillery requests a jury trial of all claims and issues.

Respectfully submitted this September 27, 2018 by:

Mitchiner Law, LLC                              Murray Law, LLC

/s/ Thomas H. Mitchiner                         /s/ Steven Murray
Thomas H. Mitchiner                             Steven Murray
Mitchiner Law, LLC                              Murray Law, LLC
1888 N. Sherman St., Ste 200                    1888 N. Sherman St., Ste 200
Denver, CO 80203                                Denver, CO 80203
Phone: 720-538-0371                             Phone: 303-396-9952
E-mail: tmitchiner@mitchinerlawllc.com          E-mail: steven@smurraylaw.com

Attorneys for Plaintiff Tasha Tillery

Address of Plaintiff:
Tasha Tillery, 10594 West Lane, Rye, CO 81069